Yes, Your Honor. May it please the Court, I am Joseph Baio, Counsel for Appellants and On this appeal, Your Honors, my clients challenged the decision of the District Court to grant an application brought under 28 U.S.C. Section 1782 to secure discovery against them for use in a foreign arbitration. The application was improperly granted for the following reasons. First, under Second Circuit precedent, notably the decisions in N.B.C. and most recently in Ray Guo, private international arbitrations do not constitute proceedings before a foreign or international tribunal as statutorily required under Section 1782. And parties to such arbitrations are not eligible for relief under that statute. In Guo, this Court further validated the N.B.C. decision and identified a range of factors to be considered to determine whether the deliberative body in question possesses the functional attributes most commonly associated with private arbitration. In our papers, Your Honor, we have detailed the factors in this case. And we believe, based on the facts, the Court should have found that the arbitration commenced by the Fund in 2019 is unquestionably private in nature, and therefore the applicant, the Fund, is not entitled to the relief requested. The Guo Court began by focusing on the arbitrable body in question and the degree of state affiliation with that arbitral body. Here, the factors weigh heavily in favor of the conclusion that the arbitrable arbitral body is private. It is an ad hoc arbitration. The Fund selected that among a menu that was available to the Fund. If it is indeed an investor, it picked ad hoc as opposed to a court or an arbitral court or any of the other alternatives that were available. The panel itself is private, selected by the parties. Its decision is final. Neither Lithuania nor Russia plays any deliberative role, although Lithuania is a defendant. Indeed, every factor shows that this proceeding is independent from any governmental entity. So, as a foundational issue, we believe that the arbitration is private, and that precludes the relief that was sought. The other side has stated, and the Court below relied on, the fact that there is a bilateral treaty between Lithuania and Russia involved. I think that based on Guo and NBC, that argument does not carry water. The fact is that the treaty itself does not create UNCATRAL, which is the entity whose rules are followed in the arbitration. Neither Russia nor Lithuania play any role in the decision-making. They have nothing whatsoever to do with resolving the issue or the procedures that are going to be involved. So, while the bilateral treaty is involved, it does not focus on or have anything to do with the arbitral body, which itself is private. The Court below also relied on the fact that Lithuania is a party. That also is not a factor as to what the nature of the arbitration itself is. Your Honor, I think that's my three minutes. If there are questions on that side, I'd be happy to take them, or I'll proceed. Judge Pooler, any questions? Yes, I have a question. Thank you. Mr. Bow, you sent us a 28-J letter calling to our attention that the Supreme Court granted certiorari and servotronics versus Rolls-Royce. Do you believe we have to hold the decision in this case before us for the result of the Supreme Court decision, or can we go ahead in any event? I believe you can go ahead, but I also believe that you can wait, Your Honor, in your discretion. The issue that's before the Supreme Court is a foundational one, one that Judge Cabran has dealt with in NBC, and that is, it's a private arbitral proceeding outside the scope of 1782. And the Court will address the in re guo. The Court re-evaluated or looked at what Judge Cabran has identified in his opinion and said private is out. Now, the Court may conclude that private is not an exclusion, that is a private arbitration. It's possible. If they did, I think we would be back before you. If they don't, this Court's decision as to whether in this particular case the uncontrolled arbitration and the matters that are before the arbitration are private, and if so, and the Supreme Court goes that way, then there will be no need to do anything. We always like that. I will have other questions after completion of argument. Thank you, Judge Cabran. Judge Bianco? Yes, I'm sorry. Thank you. I just want to follow up on that. I don't see how that Supreme Court case can help you. I think it can only hurt you, because if the Supreme Court reverses the Seventh Circuit and overrules NBC, and so the private commercial arbitral tribunal can qualify, then you lose on the second requirement. Obviously, that would be dispositive against you. If it rules the other way and upholds our decision in NBC, then we still have to decide whether or not this situation is factually distinguishable from NBC, right? I think that's largely correct, Judge Bianco. The only thing is that the Supreme Court could very well identify something in between. They may not say that private is always okay. They may not say that private is always not okay. It isn't necessarily outcome determinative adversely. That case doesn't involve an international, it doesn't involve a bilateral treaty agreement. They're not going to reach that. No, they are not going to reach that. The question to you would be, putting that case aside, why in NBC, and you know this, in Glow and NBC, you're dealing with private parties. In NBC, Judge Cabrera specifically carved out, it's dicta, but it's carved out. He wrote contemporaneous academic literature, reinforces our conclusion that the international tribunals that were encompassed by the repeal of 270 to 270G, and which were the subject of this legislation, were those created by intergovernmental agreement. In Glow, Judge Livingston, footnote seven, specifically noted, we're not talking about intergovernmental agreements. He went in great detail in that footnote to note that that's a different scenario. So, I don't understand why you think NBC or Glow helped you when both decisions went out of their way to note that the situation would be completely different if it involved an intergovernmental agreement, which this does. Well, Judge, I think that those cases are saying that it may constitute a grounds to say that the arbitration is not private. Of course, it may. They were, I would say, they're not necessarily saying may, it's right in the heartland. It's the whole, I'm trying to think of a scenario that would be more within the heartland than one where two countries entered a treaty saying, we want to bring this matter to this tribunal to resolve these disputes that come up. And in our case, one foreign state is a party to that arbitration. And you want us to conclude that that's not an international tribunal. I think we would be not legit. I'm sorry, say that again. I'm sorry. I didn't mean to interrupt you. No, go ahead. Go ahead. Yeah, go ahead. Yeah. Judge, the treaty does not create the arbitral body. It's not like it was in CPAC and Glow where the Chinese government created the entity that was resolving the matter. I misspoke. That's not the case here. No, but it's the jurisdiction. You're right. I misspoke there, but it's the jurisdictional basis for the dispute is the treaty, right? Yes, but this is the structure that they chose to resolve these types of disputes between two sovereign nations. Yes. And the claimant has the ability to choose courts or courts of arbitration. That's the first selection. It's available. We would be having a very different argument if they did that, but they selected an arbitrable body, an arbitral body that is separate and ad hoc arbitration. And all of these decisions are focusing on the arbitral entity and whether it is governmentally controlled. Certainly the treaty says you can go to these various places. Didn't Judge Livingston say in Glow that just because the party select a private arbitration tribunal, that's not dispositive because she noted specifically agreements between countries have that, which is what we have here. So she was specifically noting this type of situation. You're suggesting to us, even though it's an agreement between countries and that's the jurisdictional origin that because they selected a private tribunal, it's game over. Well, I don't think so, Judge, with respect because Judge Livingston specifically said, I'm not going to look at the origins of the jurisdiction. I'm going because even in the origins of the tribunal, of the tribunal itself, not of the jurisdiction. She said she's going to look at the origin of the jurisdiction. She's not going to look at the tribunal. Okay. Well, Judge, if you, if the bilateral treaty issue is certainly an important one here, I think that when you look at NBC and the analysis of, you know, we're trying to do something here that will encourage foreign countries to reciprocate. That's the original commission in 1958. There is no such reciprocity here because the sovereigns are not involved other than Lithuania is the defendant. They have no benefit or they can't see that, oh, the discovery is going forward. So we will do the same. The fundamental benefit and the desired effect of 1782 does not occur when you have a private arbitral entity, even if there is a treaty that leads to it. And we did not find any case that said a treaty is outcome determinative. We're also not suggesting that any one factor that we identified is outcome determinative. We list every aspect of the proceeding that's going on between the fund and Lithuania and they all point to private arbitration. That's all. All right. Thank you, Mr. Bail. Sure. All right. I think we're, Mr. Bail has reserved two minutes for rebuttal and we'll hear now from Mr. Janos. Thank you so much, Judge Cabranes. May it please the court. My name is Alex Janos, as I said, and I'm from the firm of Alston and Byrd. I represent the Apoly, the Fund for Protection of Investor Rights in Foreign States, which is also the claimant in the dispute with the Republic of Lithuania that is currently before a tribunal constituted pursuant to Article 10 of the treaty known as the agreement between the government of the Russian Federation and the government of the Republic of Lithuania on the promotion and reciprocal protection of investment. We do appreciate the opportunity afforded by the court to explain why this appeal is meritless. And I think this is very much what Judge Bianco touched on a moment ago, but we agree that this case has nothing to do with NBC or Glow or the availability of discovery pursuant to Section 1782 in support of commercial arbitrations based on private contractual agreements. The fact that a private contractually based international tribunal does not qualify as a foreign tribunal under Section 1782, which is the holding of NBC and Glow, is a matter of settled law in this court, as we'll talk about a little bit later. The Supreme Court has obviously said it will look at the split in the circuit, but I completely agree with Judge Bianco that that will have no impact on this case. I want to mention a couple of linguistic points relating to the statute. The statute has no reference to the word private. The issue is, are you a foreign tribunal or are you an international tribunal? Those are the key words in the statute. And here, our position is that we are before an international tribunal. And I think it's important to recall that the same question we're asking this tribunal to answer has been answered numerous times by the federal courts in the affirmative and including by the Third Circuit. So, ruling otherwise here would actually create a circuit split. That was in the Henry Chevron court case. I should also note that this court has twice upheld district court orders involving 1782 discovery and support of investment in both of those cases. The underlying proceeding was an arbitration pursuant to a bilateral investment treaty. Now, I did want to mention a couple of factual points raised in the colloquy, and I should say before I do that, my three minutes are up if you want to ask me questions before I do that. Well, perhaps we could pick up on Judge Pooler's earlier question to opposing counsel, whether you join in opposing counsel's request that this court hold its disposition to consider the Supreme Court's pending resolution in servotronics. Yeah, no, for sure. We do not. You know, as Judge Pooler and Judge Bianco both seemed to indicate, and as I completely agree, there are only two outcomes of servotronics. One is that they uphold Gluon and DC, which would be fine with us. We think that's good law, but we don't see them as in any way incongruous with our position since they don't deal with the question of international tribunal created pursuant to an investment treaty. Or they go the other route and invalidate Gluon and DC, in which case, although I still don't think it's directly on point, one would think it's all the more likely that one would agree that the discovery we're seeking is merited. So I don't really see any benefit in waiting for the Supreme Court decision just in case they throw out some dicta that might be interesting. There's lots of dicta that's very interesting and relevant to our position already in the Intel case, but that's not what we're relying on here. But Mr. Judge Bianco, let me just follow up. We would not have to do this analysis at all if they were to reverse the Seventh Circuit and overrule NBC, then we could essentially skip this particular debate that we're having, right? Or am I missing something? Yes and no. Again, that's going to be really turning on the proper construction of the term foreign tribunal. And since we're really on the international tribunal prong, I agree it makes it all the more true that we're entitled to discovery, but I don't agree that we're a private foreign tribunal. Mr. Harris's point was that they might decide something in between or in deciding that issue, they might provide some additional guidance. Why would that be helpful? Well, yeah. I mean, as I said, the Supreme Court is the mountaintop and we're all interested in receiving their guidance. But since this is not a topic that is covered by the appeal or one that's likely to be discussed by either of the appellants on that appeal, I don't think that there would be, it would be likely that there would be significant or material guidance in relation to this. Counsel, I have a question. This is Judge Brewer. You are not treating foreign or international tribunal as a single phrase, but talking about foreign and or international. Is that the way it's been viewed in the past? Yes. There are numerous district court rulings consistent with that analysis. And there's also several, and then the third circuit also underscored that distinction. And I thought that that was what the, was underpinning Judge Note 7 that was referenced earlier by Judge Bianco. So I think so, yeah. I should just correct the record on a couple of points. The other side said that the treaty did not create this arbitral body. It did in several respects. First of all, but for the treaty, we would have no right to arbitration. What happened is Russia and Lithuania made reciprocal promises to offer investors from each other's country the opportunity to arbitrate when they felt that they had been mistreated under the treaty. So essentially the promise to arbitrate that we accepted or the offer to arbitrate that we accepted was in itself an offer pursuant to a treaty. Lithuania itself appointed one of the arbitrators, and therefore Lithuania did have a hand in the creation of the arbitral body. So I think it's important to mention that. I also, there was a statement that states don't derive any benefits from 1782 in this context. That also is not true. In fact, Ecuador itself has sought discovery pursuant to 1782. I think that was in the Ninth Circuit and received it. So in fact, states themselves also have obtained, have sought and obtained discovery pursuant to section 1782 in connection with bilateral investment treaty arbitration. Counsel, I have one other question, a slightly different topic, but part of the same case. What about the Lithuanian banking secrecy rules? How does, how will discovery deal with that? And is Judge Torres' opinion giving the parties the opportunity to get protective orders sufficient to deal with that? Absolutely. First of all... Breakout session mode is ending now. You will be returned to the main conference. This conference is being recorded. Only the public can hear you. I'll continue. I lost a couple of seconds, but just quickly to answer your question, Judge Pooler. First of all, there will be in, obviously in the arbitration itself, which is the key forum, an opportunity for Lithuania to seek any kind of protection since it's their bank secrecy laws that apply. Second of all, after we went on appeal, there will be an opportunity for the Alex partners to seek a protective order and nothing in Judge Torres' ruling precludes that. Thank you. Thank you. I assume we're still on this call, no matter what we heard. I assume so. Thanks. All right. So Mr. Baio has reserved two minutes. Thank you, Your Honor. First and foremost, I do think that there is the possibility that if the it may not, but certainly it may, and the court can decide that it wants to wait. Excuse me. This is Judge Pooler. Excuse me for interrupting. Would you explain to me what the Supreme Court has to say to make this case outcome determinative? If they say that private arbitration panels are also included within the scope of 1782, I think we will lose. Then you would give up your objection to this particular panel. Well, I would read the decision, Judge, obviously, and read it closely to see if there is anything that would distinguish ours from what the court held. But look, if we are dead in the water, we will act accordingly. This is Judge Bianco. Then what about the intel factors, though? We would still have to do the intel factors analysis, right? Yes. Yes. And there also is my standing argument or my, are they an interested person? And Your Honor, I can address that in two minutes, if you'd like. Please go ahead. Okay. So the fund hasn't demonstrated that it is an interested person as required in order for the applicant to receive relief, to be sure they have started the proceeding, the arbitration. I get that. But they admit in their pleadings that they are not an investor, can invoke the treaty. Now, they say they are an assinee. There is nothing in the record from the supposed investor, nothing, that says I've turned this over to the other side, that I've now given this to this fund in order to pursue it. Now, I'm not asking this court to determine what's standing under Lithuanian law or in the arbitration. But there is a question, and we have no evidence from the party that owns the claim, that they provided it to the fund that's being challenged over there. And then we said, well, they're not an investor. So on its face, they don't make it. And with respect to the alleged assignment, where is the assignment? Supposedly the claim... Go ahead, Your Honor. To provide that information at this stage of the proceeding, when they're challenging the very existence of the panel, isn't there time for them to provide their status as claim holder or as assignee? I don't think so, Your Honor. Not for our purposes. We're not Lithuanian. We're two parties in the United States who are going to either have to turn over documents about events that occurred a decade ago, if we can find them, give testimony, and it will be meaningless to us if later they're found not to have standing over there. There is a requirement in the statute that they be an interested person, an interested person as you have substantial rights to proceed. We have raised the subject of whether they have any such rights, and they've nothing, nothing in response to that. Did you raise the issue before Judge Torr? Absolutely, Your Honor. And the conclusion there was because they are a party, a party wins. They have enough, a party to an arbitration. And what we're saying is when there is a real question about whether they are a party that has substantial rights in the arbitration, the court should put some requirement on them to demonstrate- Mr. Bail, the certain funds case said it defined significant participation rights, which was the language in the Intel case, as rights that are prominently, prominently include the applicant's ability to use the evidence that's sought in the U.S. courts before the position to use the evidence, why didn't that give them a significant participation right? They're in the arbitration and they can use the evidence. Well, we don't know that they can use the evidence, Your Honor, right? There is no such finding. Well, no, but you don't allow them to seek this. So, obviously, there's, they didn't make a finding they can be able to use it, but clearly they're open to the idea that they could use it or they wouldn't have allowed them to even pursue this. Well, the panel was using the irreparable injury standard. There was a motion and it's in the papers and part of the record where Lithuania moved to get them to pull their request here. And the court said, we're not going to pass on whether this is good or bad or whether we're going to allow it in. You're not irreparably injured because we can decide down the road whether the case should proceed or whether the discovery that they get can be used. So, there is this cloud, which they have done nothing to try to do. As for the Third Circuit cases, Your Honors, I think they're all distinguishable. We distinguish them in our briefs. There are governmental issues where the government is undertaking an international review or a criminal investigation. Every one of them we've distinguished in our circuit. Is there anything further I can give you? No, thank you for me. Thanks very much. All right, we'll reserve the stage in 20-2653, application of the fund, etc. versus Alex Partners.